ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2008 FEB -5 AM 8:57
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| RUTH JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 107-020 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Ruth Jackson ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

### I. BACKGROUND

Based upon claims of disability dating back to June 19, 2001, Plaintiff applied for DIB and SSI in April 2002, with a protective filing date of June 27, 2001. Tr. ("R."), pp. 41-43, 47-49. The Social Security Administration denied Plaintiff's original claim and her

request for reconsideration. R. 26-29, 31-34, 51-54, 56-58. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 35. Represented by counsel, Plaintiff appeared and testified at a hearing on February 5, 2003. R. 326-68. The ALJ then issued an unfavorable decision dated October 22, 2003. R. 150-60.

On May 12, 2004, the Appeals Council ("AC") vacated the ALJ's decision and remanded the case for consideration based on a medical report, not available to the ALJ at the time he made his decision.[1] R. 171-73. The AC indicated, inter alia, the need for "the testimony of a medical expert, in order to determine the severity of this impairment and its effect, if any, on the claimant's ability to perform work related functions." R. 171.

A supplemental hearing was held before a different ALJ on June 6, 2005. R. 369-414. Represented by counsel, Plaintiff appeared and testified at a hearing on June 6, 2005. R. 369-414. A Vocational Expert ("VE") and a Medical Expert, Neil P. Lewis, Ph.D., also testified at this hearing. Id. Upon considering Plaintiff's claims de novo, the ALJ then issued an unfavorable decision dated April 25, 2006. R. 15-23.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR §§ 416.920(b) and 404.1520(b)).

2. The claimant has the following severe impairments: status-post neck, left femoral shaft, right metatarsal, and right fibular fractures (20 CFR §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of

---

[1]The medical report revealed Plaintiff had brain damage. R. 171-73.

2

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light exertional work. She is further limited to simple, unskilled repetitive work (20 CFR § 416.965). The claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).

5. Although the claimant has additional limitations, these limitations have little or no effect on the occupational base of unskilled light work. Considering the claimant's age, education, work experience, RFC, and the testimony of the VE, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR §§ 404.1560(c), 404.1566, 416.960(c), 416.966). Therefore, a finding of "not disabled" is appropriate under the framework of this rule.

R. 18-23.

When the AC denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. R. 7-9. Having failed to convince the AC to review her case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff now argues that the ALJ erred in failing to properly address all relevant medical opinion evidence and state with particularity the weight she assigned to the medical opinions. Pl.'s Br., p. 4.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the

3

Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to

4

determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues that the case should be remanded because the ALJ erred in failing to state with particularity the weight given to different medical opinions, and the reasons therefor. Pl.'s Br., pp. 4, 7-8. The Commissioner does not address this issue, but summarily states, "The ALJ properly evaluated Plaintiff's medical conditions; appropriately weighed the medical evidence, and properly determined Plaintiff's RFC." Comm'r Br., p. 13. The Commissioner sets forth Plaintiff's impairments, and a synopsis of the opinions of the four doctors who provided opinions regarding Plaintiff's psychological impairments. Id. at 14. However, the Commissioner does not point to where the ALJ has stated with particularity the weight given to the different medical opinions and the reasons therefor. As such, Plaintiff has the better argument.

The Eleventh Circuit has ruled, "The ALJ is required to 'state with particularity the weight he gave different medical opinions and the reasons therefor.'" Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (*per curiam*). Although the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion, Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983), failure to explain the weight given to different medical opinions is reversible error. Sharfarz, 825 F.2d at 279. Furthermore, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise)

5

be given more weight than non-specialists. See 20 C.F.R. § 404.1527(d)(1)-(2), (5).

In this case, Plaintiff contends that the ALJ's consideration of Plaintiff's psychological impairment is inadequate because not only did the ALJ fail to address the opinions of Drs. Hartlage and Lewis, the ALJ also failed to explain the weight given to the medical opinions she did cite. Pl.'s Br., p. 7. The Court agrees. Plaintiff's record contains four separate psychological opinions concerning her psychological impairment, (R. 199-200, 253-55, 259-65, 400-05), but the ALJ did not address two of those four opinions. Although the Commissioner dedicates four pages of his brief to describing the findings of these four medical opinions and another four pages assigning weight to these opinions in a post-hoc attempt to minimize this error, (Comm'r Br., pp. 6-9, 14-17), the fact remains that the ALJ did not perform such an analysis at the administrative level. The Court cannot now excuse this error as harmless based on the Commissioner's post-hoc assessment of the record. Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]").

Notably, after Plaintiff's disability claims were denied on October 22, 2003, one of her attorneys sent Plaintiff to Lawrence Hartlage, Ph.D., a clinical psychologist, for assessment of her RFC in conjunction with her disability claims. R. 199-200. Dr. Hartlage noted that Plaintiff had problems with her short term memory and emotional lability. R. 199. Dr. Hartlage's assessment of Plaintiff's short term memory revealed performance in the bottom one percentile. Id. Dr. Hartlage concluded that this result was totally incompatible with past education and work history, but entirely congruent with selective neurocognitive

impairments resultant from traumatic brain injury. Id. Dr. Hartlage also found that the test he performed showed clear evidence of a neuropsychological impairment. R. 200. He diagnosed Plaintiff with post concussion cerebri with residual organic dementia that was "disabling level of severity." Id.

Plaintiff also had a consultative psychological examination as ordered by the AC. R. 171-72. Plaintiff was examined by Gregory P. Hollis, Ph.D., a clinical neurologist. R. 259-65. After conducting several tests on Plaintiff, Dr. Hollis opined, among other things, that Plaintiff's neuropsychological test results showed some problems with attention and concentration and with both short and long-term memory for both visual and spatial information. R. 261. On a test of verbal fluency, Plaintiff performed within the below normal range with mild difficulty in generating words based on what was required of her by giving her the letters. Id. Plaintiff showed some mild verbal perseveration. Dr. Hollis concluded:

> Overall [Plaintiff] shows some significant compromise particularly with her verbal and visual memory in both the recent and remote modality. This is evidenced by poor attention and concentration and with difficulty encoding and retrieving the information. In addition, she is slow and weak with her non-preferred left hand and has some dysarthria in her speech. Intellectual functioning along with word recognition and arithmetic skills are also below expected levels given her education and vocational experience. There is compromise of her neurobehavioral functioning.

Id. at 262.

Two weeks later Plaintiff was seen by Theodore A. Daniel, Psy. D., a licensed psychologist, who conducted a clinical interview of Plaintiff.[2] R. 253-58. Dr. Daniel

---

[2] Dr. Daniel did not give Plaintiff any formal testing because within a month of his consultation with Plaintiff, a complete psychological examination had been done by Dr.

7

concluded:

> [Plaintiff's] intellectual level was judged to fall in the average range. . . . She has no history of psychiatric hospitalizations or outpatient counseling, and she does not take any psychotropic medications. Moreover, there was no evidence for the presence of a thought disorder. Instead, the overall findings were consistent with depression and chronic pain secondary to a MVA. In [Dr. Daniel's] opinion, her ability to understand and to carry out simple instructions is fair. Her ability to cooperate with others is fair. Her ability to focus attention in order to complete assigned tasks in an employment environment is limited. She can benefit from psychotherapeutic services in order to treat her depression, to help her cope with interpersonal difficulties with her daughter, as well as other problems associated with her medical conditions.

R. 255.

At Plaintiff's June 2005 hearing, a licensed applied psychologist, testified as a medical expert. R. 400-05. Prior to the hearing, Dr. Lewis reviewed the medical evidence in Plaintiff's record and concluded that the record showed that Plaintiff had never received any mental health treatment. R. 401. Dr. Lewis testified that Plaintiff's three psychological evaluations resulted in conflicting evidence concerning her psychological functioning. R. 401-02. It was his opinion that Plaintiff did not reflect any significant degree of pathology or substantial neural pathological impairment. R. 402. He also determined that Plaintiff did not meet or equal any mental impairment listing. Id. He did find that, giving Plaintiff the benefit of the doubt with regard to her RFC from a psychological standpoint, in a work setting, he would restrict Plaintiff to simple, repetitive tasks, i.e., one, two or three step tasks, and would further limit her to a low stress environment. Id.

Dr. Lewis acknowledged that the scores of the tests administered by Dr. Hartlage, if

---

Hollis, who is a colleague of Dr. Daniel, and to assess her again was deemed to be repetitious and unnecessary. R. 254. Thus, only a mental status was done by Dr. Daniel. Id.

8

valid, are generally associated with organic brain damage. R. 402-03. However, Dr. Lewis also noted that there was a disparity in scores between Dr. Hollis's and Dr. Daniel's test results. R. 403.

The ALJ, in one paragraph, addresses the medical opinions regarding Plaintiff's psychological impairment. The ALJ's opinion provides:

> A psychological evaluation of October 18, 2004, revealed diagnoses of depressive disorder and post-traumatic stress disorder. Nonetheless, the claimant was estimated with the ability to carry out and understand simple instructions, cooperate with others, and sustain focused attention in order to complete assigned tasks (Exhibit 12 F). A psychological report of October 4, 2004, revealed depressive disorder and dementia, secondary to a closed head trauma. Dr. Hollis estimated a limited mental capacity secondary to her accident; however, this medical opinion is inconsistent with the medical record in its entirety and completely unsupported by objective, clinical evidence (Exhibit 13 F).

R. 21.

Not only does the ALJ fail to state with particularity the weight she gave to all of the different medical opinions and the reasons therefore, she completely failed to even mention the opinions of Drs. Hartlage and Lewis (the ALJ's medical expert whose testimony the ALJ's opinion mirrored).[3]

As noted supra, the ALJ is required to 'state with particularity the weight [s]he gave different medical opinions and the reasons therefor.'" See Sharfarz, 825 F.2d 279. Indeed, the Commissioner has recognized this duty in another case pending before the Court:

---

[3] Of course, the Court is aware that the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. Bloodsworth, 703 F.2d at 1240. The Court notes that the ALJ did state her reasons for rejecting Dr. Hollis's opinion, namely it was inconsistent with the medical record in its entirety and completely unsupported by objective, clinical evidence. R. 21.

9

> However, when an ALJ rejects a treating physician or other examining source's medical opinion, he must give, "specific reasons for the weight given to the treating [or examining] source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating [or examining] source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p.

Brown v. Comm'r of Social Sec., CV 306-077, doc. no. 9, n.7 (S.D. Ga. Apr. 2, 2007). In this case, however, the ALJ has simply failed to satisfy this requirement.

The record in this case contains four opinions that are not in complete agreement on Plaintiff's psychological impairments. There is Dr. Hartlage's opinion indicating that Plaintiff suffers from severe, disabling organic brain damage. There is Dr. Hollis's opinion indicating Plaintiff has a compromise of neuropsychological functioning, and a depressive disorder secondary to a closed head trauma. There is Dr. Daniel's opinion that finds Plaintiff's limitations are less restrictive than those found by Drs. Hartlage and Hollis. Finally, there is Dr. Lewis's opinion that there was not much evidence to support that Plaintiff had organic brain damage. It is also important to note that the ALJ does not address Dr. Lewis's opinion even though he was designated as a medical expert, testified at Plaintiff's hearing, and provided an opinion that the ALJ's findings mirrored.

Of note, the Commissioner summarily states that the ALJ "appropriately weighed the medical evidence." Comm'r Br., p. 13. The Commissioner acknowledges the "clearly differing medical opinions with respect to Plaintiff's mental limitations," and he concedes that the opinions of Drs. Hartlage, Hollis, Daniel and Lewis concerning Plaintiff's mental limitations conflict in varying degrees." Id. at 14. The Commissioner then addresses each report and findings from the actual medical reports; he does not address the ALJ's opinion.

Indeed, the Commissioner cites extensively to the record, more specifically, to Dr. Lewis's testimony at the June 2005 hearing, and other medical records (R. 97, 113, 250) in an apparent attempt to convince the Court that the ALJ weighed the evidence to resolve the material conflicts, but this post-hoc analysis from the Commissioner is not reflected in the ALJ's opinion.

Plainly, the ALJ's opinion does not consider two of the four opinions regarding Plaintiff's psychological limitations. Moreover, for the opinions that are addressed, the ALJ has not stated, with the exception of Dr. Hollis's opinion, with particularity the weight she gave these opinions, nor the reasons therefor. As the ALJ did not state with particularity the weight given these opinions, the Court cannot determine how the ALJ resolved the conflicting opinions. The Court must review the decision as delivered by the ALJ, but here the Court is unable to perform any meaningful judicial review because the ALJ simply did not make her thought processes known in her decision. See Hudson v. Heckler, 755 F. 2d 781, 786 (11th Cir. 1985) (noting that in the absence of stating specifically the weight accorded each item of evidence, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence). Stated otherwise, this Court cannot now engage in an administrative review that was not done in the first instance by the Commissioner via the ALJ. Martin, 748 F.2d at 1031. Indeed, as noted above, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*) (citing Bloodsworth, 703 F.2d at 1239).

In sum, the ALJ failed to state with particularity the weight she gave different medical opinions and the reasons therefor. The Court is mindful of the difficulties of evaluating a claimant's impairments and weighing the medical opinions that appear in an administrative record. Nonetheless, the law requires the Commissioner to provide a well-reasoned, well-articulated decision. Without such an analysis, the federal courts are unable to provide claimants with a sound, meaningful review of the administrative decision. The ALJ in this case undoubtedly failed to address two of psychological opinions (including the medical expert's opinion), let alone assign a weight to, or provide an explanation to discredit, three of the four opinions. Accordingly, this case should be remanded for proper consideration, in the first instance at the administrative level of review, of all of the psychological opinions of record.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 5th day of February, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE